INHABITANTS OF THE TOWN OF ORRINGTON

*vs.*

CITY OF BANGOR.

Penobscot.     Opinion, March 12, 1946.

*Chester A. Robinson,* for plaintiff.

*Benjamin W. Blanchard,* for defendant.

SITTING: THAXTER, HUDSON, MANSER, MURCHIE, AND TOMPKINS, JJ.

HUDSON, J.   This is an action brought by the Inhabitants of the Town of Orrington against the City of Bangor to recover for pauper supplies furnished by the plaintiffs to Christie W. Hutch-

inson and her two minor children, alleged paupers of the defendant city. It was heard below by a justice of the Superior Court, who found for the plaintiffs, to which finding exceptions were taken to this Court.

The only question raised is the pauper settlement of Mrs. Hutchinson and her children at the time the relief was afforded, and that depends upon the construction of P. L. 1933, Chap. 203, Sec. 1, which reads as follows:

"A married woman has the settlement of her husband, if he has any in the state; if he has not, she shall be deemed to have no settlement in the state. A woman over 21 years of age, having no husband, shall acquire a settlement in a town by having her home therein for 5 consecutive years, without receiving supplies as a pauper. When, in a suit between towns involving the settlement of a pauper, it appears that a marriage was procured to change it by the agency or collusion of the officers of either town, or of any person having charge of such pauper under authority of either town, the settlement is not affected by such marriage. And no derivative settlement is acquired or changed by a marriage so procured, but the children of such marriage and their descendants have the settlement which they would have had if no such marriage had taken place. And the same rule applies in all controversies touching the settlement of paupers between the town by whose officers a marriage is thus procured and any other town whether the person whose marriage is thus procured is a pauper at the time of the marriage or becomes so afterwards."

The same statute in effect now appears in R. S. 1944, Chap. 82, Sec. 1, Par. I.

Christie Hutchinson had been previously married to Rexford W. White, whose pauper settlement was in the Town of Greenfield, and by that marriage she obtained a settlement in Greenfield. She was divorced from Mr. White September 25,

1940, having had by him the two children who later, with her, were relieved from distress by Orrington.

"Minor children of parents divorced after July 12, 1929, if given into the custody of either parent by the decree of divorce, shall follow the settlement of the parent to whom custody is given. . . ." P. L. 1935, Chap. 186, now appearing in R. S. 1944, Chap. 82, Sec. 1, Par. II.

So the pauper settlements of these two children, their custody having been given to their mother in the divorce proceedings, "follow" her pauper settlement.

On November 7, 1940, she married Harvey K. Hutchinson, whose pauper settlement was in the City of Bangor. The defendant claimed that the marriage to Hutchinson was procured through the agency or collusion of the Town of Greenfield, and so, by reason of the statute, "no derivative settlement" in Bangor was."acquired or changed by a marriage so procured." On the other hand, the plaintiffs contended that the statute is inapplicable because the Town of Greenfield is not a party to this action. The Court below sustained the contention of the plaintiffs and ruled as a matter of law that proof of the marriage so procured would not constitute a defense in this action. In its decision it stated:

"The defendant does not attempt to show that the marriage was brought about in any manner by either town involved in this suit, so this evidence cannot show that which is necessary to be shown under the statute, namely, 'a marriage so procured.' "

To this ruling the exceptions before us were taken. Thus the necessity for construction of this statute. The question then is whether or not under this statute it is only when the town procuring the collusive marriage is a party to the litigation that a marriage so procured will affect the pauper settlement. Neither the plaintiffs nor the defendant had anything to do with the pro-

curement of this marriage. Had the Town of Greenfield which procured it been a party, the statute would have been applicable. Although we have made a careful search of the Maine cases in which this statute has been involved, we have found none in which it has been given application in which the town acting collusively was not a party.

> "At common law, public authorities were not liable for the support of paupers. The obligation of towns and plantations in reference to their support originates solely in statutory enactment and has none of the elements of a contract, express or implied. There are no equitable considerations out of which presumptions in favor of either party will arise. The statutes upon the subject are not to be modified or enlarged by construction and nothing is to be deemed to be within their spirit and meaning which is not clearly expressed in words." *Auburn* v. *Farmington*, 133 Me., 213, on page 215.

In this state, the effect of a collusive marriage upon a pauper settlement is governed solely by statute. Hence, herein we confine ourselves simply to a construction of the statute.

The first sentence of the pertinent part of the statute reads:

> "When, in a suit between towns involving the settlement of a pauper, it appears that a marriage was procured to change it *by the agency or collusion of the officers of either town*, or of any person having charge of such pauper under authority *of either town*, the settlement is not affected by such marriage." (Italics ours.)

Of vital significance are the words "of either town." We think they refer only to the towns engaged in the controversy through the agency or collusion of one of which the marriage was procured to change the pauper settlement. Such is not the fact in this case. Hence, thus far, the statute is inapplicable.

The statute continues:

"And no derivative settlement is acquired or changed by a marriage *so procured*, but the children of such marriage and their descendants have the settlement which they would have had if no such marriage had taken place." (Italics ours.)

The words "so procured" refer back to the language of the previous sentence and must be held to mean a marriage procured by the agency or collusion *of either party to the action*.

The last sentence in the paragraph reads:

"And the same rule applies *in all controversies* touching the settlement of paupers *between the town by whose officers a marriage is thus procured and any other town* whether the person whose marriage is thus procured is a pauper at the time of the marriage or becomes so afterwards." (Italics ours.)

Here, again, the rule is made to apply only to controversies touching the settlement of paupers wherein one of the parties to the action is the town charged with the procurement of the marriage.

Our examination of this statute, as well as of it in previous revisions, convinces us that it applies only to actions in which the town which procures such a marriage is a party. Whether or not this should be so is not for us to determine. The legislature has spoken and the law as enacted is clear and unambiguous. Whether or not it should be changed is for that body to determine. It is not for us to amend the law judicially.

*Exceptions overruled.*

Chief Justice Sturgis did not sit in this case.